(No. 46282.—

*In re* WILLIAM T. DI BELLA, Attorney, Respondent.

*Opinion filed September 17, 1974.*

George B. Collins, of Chicago, for respondent.

John F. McCarthy, of Chicago, for *amicus curiae* Board of Managers of the Chicago Bar Association.

MR. JUSTICE WARD delivered the opinion of the court:

The Committee on Grievances of the Chicago Bar Association and the Association's Board of Managers, sitting as commissioners of this court, have recommended that the respondent, William T. Di Bella, who was admitted to the bar of Illinois in 1956, be suspended from the practice of law for a period of three years.

Evidence presented at the disciplinary proceeding showed that the respondent, without the knowledge of his client, ostensibly entered into a settlement of her claims with an insurance company and wrongfully appropriated the proceeds of the settlement.

In July, 1966, Mary B. McGinnis and two other persons retained the respondent to represent them in personal injury claims which arose from an automobile collision. He filed suit in behalf of Miss McGinnis and the others and ascertained that the limit of the liability insurance policy carried by the defendants was $25,000. He negotiated a proposed settlement in 1968 with the insurer for $24,500, of which $22,000 was to satisfy the claim of Miss McGinnis. The claims of the two other clients, Ruth Flood and Ralph Amaedo, were to be settled for $2,000 and $500 respectively. Miss McGinnis, however, was unwilling to settle her claim for $22,000, even after the respondent had advised her of the policy limits and informed her that his investigation had disclosed that the defendants had no personal assets which could be used to satisfy any judgment which might be obtained. When he told Miss McGinnis, he testified, that he didn't think he could do any better for her she instructed him to "pursue them personally." The case of Ruth Flood was settled for $2,000 and she was promptly given her share of the settlement by the respondent. Amaedo also agreed to the settlement and there is no question here regarding the proceeds of his settlement.

The respondent admitted that he endorsed the name of Miss McGinnis to releases he had received from the insurer without her authority or knowledge and had returned the releases to the insurer, which then issued a draft in the amount of $22,000 payable to Miss McGinnis and the respondent. He endorsed the name of Miss McGinnis to the draft and, after cashing it, retained the entire proceeds. Miss McGinnis did not know of the endorsement and cashing of the draft.

In December, 1971, or January, 1972, Miss McGinnis told the respondent she was willing to settle her claim for $22,000. The respondent had spoken to her from time to time and had recommended that she accept the offer of settlement. She came to his office and signed a release which the respondent had prepared and at that time he advised Miss McGinnis that he was going to reduce his fee (there had been a ¼ contingent fee agreement) by $1,500. He testified that his reducing the fee was motivated by a wish to make amends for his improper conduct. The respondent did not have funds to turn over to Miss McGinnis and it appears that she learned from the insurer of the "settlement" made in 1968 by the respondent. She engaged another attorney who made demand on the respondent for $33,772 as a proposed settlement. In his letter to the attorney who was representing the respondent at this stage, Miss McGinnis's new attorney stated that for $33,772 Miss McGinnis was prepared to execute a release and "forget about Di Bella and this whole affair as soon as possible." It is not disputed that when the respondent received a letter from the attorney representing Miss McGinnis he borrowed $17,871.34 and brought a certified check for such amount to the attorney's office the following morning. This amount represented the settlement of $22,000, less an attorney's fee of $4,000, which was a reduction of the agreed-upon fee of 25% or $5,500, less expenses.

The respondent did not make any additional payment to Miss McGinnis. On June 26, 1972, she filed a complaint against the respondent with the Chicago Bar Association, and the disciplinary proceeding followed.

The only contention of the respondent is that the three-year suspension from practice which has been recommended would be, under the circumstances, too harsh a sanction.

It cannot be denied, however, that the conduct of the respondent was completely improper and indefensible. He deceptively completed what appeared to be a settlement with the insurer of his client's claims, which was not only without her knowledge but against her express instructions. He wrongfully signed her name to releases, wrongfully endorsed and negotiated a settlement draft, and misappropriated the proceeds.

We have said that the first purpose of a disciplinary proceeding against a member of the bar is to safeguard the public, maintain the integrity of the legal profession and to protect the administration of justice from reproach. (*In re Lacob,* 50 Ill.2d 277.) The hearing panel of the Committee on Grievances, the entire Committee on Grievances, and the Board of Managers of the Association have recommended a suspension of three years. It cannot be said that this recommendation is not appropriate, and accordingly a judgment suspending the respondent from the practice of law for a period of three years is entered.

*Respondent suspended.*