(No. 48038.

*In re* RAYMOND R. SMITH, Attorney, Respondent.

*Opinion filed March 29, 1976.—Rehearing denied May 27, 1976.*

William J. Hart, of Chicago (Lawrence Stanner, of counsel), for respondent.

John Dixon, of Chicago, for the Attorney Registration and Disciplinary Commission.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is a disciplinary proceeding against respondent, Raymond R. Smith, pursuant to Supreme Court Rule 751 (Ill. Rev. Stat. 1973, ch. 110A, par. 751). Respondent was charged with conversion of a client's funds. The Hearing Board and the Review Board of the Attorney Registration and Disciplinary Commission have recommended that respondent be disbarred from the practice of law, and he contests the propriety of that sanction.

Respondent was retained by the mother of Domingo Villarreal, who had been appointed as guardian of her minor son, to prosecute an action for damages suffered by

Domingo as a result of injuries he received from an accident which occurred in 1968. It was agreed that respondent was to receive a fee of 25 percent of any amount recovered if the case was settled through negotiations and 33 1/3 percent if the case went to trial. Respondent then engaged Errett O. Graham as an associate counsel to handle the case, and a complaint was timely filed. By August 18, 1972, Villarreal had become 18 years of age, and having attained his majority, he was substituted as plaintiff. On that same day, the case was settled with the opposing party before trial for $69,000, which was later paid on September 6, 1972.

In either September or October 1972, a conference was held with Villarreal and his father at respondent's office. At this conference, respondent informed Villarreal that he was charging him a fee of 33 1/3 percent. Villarreal apparently discussed the matter with his father, who spoke only Spanish, and expressed no objection to this fee charge. Respondent and Villarreal also made an oral agreement whereby the latter agreed that respondent would hold Villarreal's portion of the settlement recovery until he became 21 years of age.

On September 11, 1972, respondent deposited the entire amount of the recovery in his personal banking account. He then used these funds that same day to purchase a cashier's check payable to Errett O. Graham in the amount of $13,847.35. This amount was paid to cover three separate items: $8,625 was Graham's attorney's fee, which was only one-half of 25 percent of the total recovery; $222.35 was for expenses advanced by Graham in prosecuting the case; and $5,000 was in repayment of a personal loan Graham had previously made to respondent. On September 11, respondent also purchased a second cashier's check with these funds for $9,000. The check was payable to the Cook County Department of Public Aid for amounts that agency had advanced to Villarreal. Respondent later used these funds to purchase a third

cashier's check on September 15, 1972. This final check was in the amount of $19,847.97 and was payable to the sheriff of Cook County for redemption of property from a judicial sale ordered in the foreclosure of a mortgage that had been executed by respondent and his wife on a house which they owned. It is uncertain whether these actions by the respondent occurred prior or subsequent to the conference at which it was agreed he would hold Villarreal's portion of the recovery.

Sometime after the above-mentioned events and before Villarreal became 21 years old, he changed his mind with respect to respondent holding his money and requested that he be paid the total amount due. Respondent refused to pay Villarreal, explaining that he had invested the money in a house. He offered to give Villarreal the house or secured notes in exchange for the money due, but these offers were rejected.

Throughout this period of time, although sporadically and with no pattern, and on occasion at the request of Villarreal, respondent would give Villarreal small sums of money, which both parties termed as "interest" on the money respondent was holding. These "interest" payments, which were made from approximately September 1972 to May 1975, totaled $5,711.75. However, except for the $9,000 which was paid to the Cook County Department of Public Aid on Villarreal's behalf, no part of the principal of the settlement was forwarded to Villarreal.

As a result of respondent's refusal to turn over the settlement proceeds, Villarreal filed a complaint with the Attorney Registration and Disciplinary Commission in the latter part of 1973. Subsequent to the filing of this complaint, Villarreal asked respondent for $10,000, which he needed immediately for a family matter. On September 22, 1973, respondent complied with this request and paid Villarreal $10,000.

On April 4, 1974, the administrator of the Attorney Registration and Disciplinary Commission filed a formal

complaint against respondent, charging him with conversion of a client's funds. The matter was submitted to the Hearing Board on September 20, 1974, and following a hearing the Board entered its findings and recommendation. However, for reasons unrelated to the present issue, the Review Board of the Commission directed that a hearing *de novo* be conducted before the Hearing Board. At this second proceeding, which was held on June 12, 1975, the administrator and respondent stipulated that the testimony of the pertinent witnesses from the initial hearing be admitted into evidence.

Villarreal testified before the Hearing Board that on June 10, 1975, he received $22,500 from respondent and that he received an additional $4,243.65 prior to the start of the proceeding on June 12, 1975. He was now completely satisfied with the accounting of the proceeds from the settlement and he had no complaint that respondent had charged him a higher fee than was initially agreed. Villarreal related that he had made an agreement with respondent whereby the latter would hold the settlement proceeds until Villarreal reached 21 years of age, but he vigorously denied that he had ever given respondent permission to use the money. He could not recall whether the agreement provided for the payment of interest. Under stiff cross-examination by counsel for respondent as to whether it was within the realm of possibility that the agreement with respondent permitted him to utilize the proceeds, Villarreal answered negatively. Upon further cross-examination, however, he stated that "possibly" that was the agreement. He also admitted that a few months prior to the hearing he had engaged respondent to represent him in a minor, unrelated matter.

Respondent testified that the agreement with Villarreal included the provision that he would utilize the settlement proceeds until Villarreal reached 21 and that he would pay interest. He explained that, at the time of the settlement in September 1972, he was experiencing severe

domestic problems. He was having financial problems with his divorce, which occurred in 1969, and he started drinking heavily after his daughter had committed suicide two months prior to the settlement. His house was being foreclosed and he used the proceeds to redeem the house and to pay certain other expenses which had arisen. Respondent stated that following these difficulties he was able to "turn himself around." He stopped drinking and he recently sold his house for $45,000. He admitted he now understood that, even with consent, it was unwise to use a client's funds for personal expenses.

Respondent's secretary testified in his behalf. She stated that she was present at the conference held in September or October of 1972, among respondent, Villarreal and Villarreal's father. She substantiated respondent's version of the agreement the parties reached.

The Hearing Board found that respondent had converted funds belonging to a client by the utilization of those funds for his personal use without authorization, and recommended that he be disbarred from the practice of law. After examination of the record, the Review Board affirmed the findings and the recommendation of the Hearing Board.

The findings made in a disciplinary proceeding are entitled to the same weight as the findings of any trier of fact in our judicial system, and the credibility of witnesses is to be determined by the commissioners who hear and observe the witnesses. (*In re Bossov,* 60 Ill.2d 439, 441.) However, " 'the ultimate responsibility for determining and imposing discipline rests with this court.' " (*In re Sherman,* 60 Ill.2d 590, 593.) While respondent was apparently experiencing severe financial and emotional problems at the time of the settlement of Villarreal's case, these circumstances, although unfortunate, afford no excuse for his actions. Respondent refused to pay Villarreal the proceeds of the recovery after repeated requests. He only initiated payment after a complaint was filed

against him, and then the greater portion of the proceeds was only paid after the initial proceeding before the Hearing Board. Respondent's assertions that Villarreal was protected by his offer of the house or secured notes are totally unsupported, because the record is devoid of any evidence concerning respondent's financial reliability or the likelihood that Villarreal could have recovered his money by a claim against respondent or his estate.

While we are mindful that Villarreal expressed no dissatisfaction with the accounting of the settlement proceeds or with the fee charged him, the "purpose of a disciplinary proceeding against a member of the bar is to safeguard the public, maintain the integrity of the legal profession and to protect the administration of justice from reproach." (*In re Di Bella*, 58 Ill.2d 5, 8.) Accordingly, having reviewed the record, we are of the opinion that the proper sanction is to disbar the respondent from the practice of law, and it is so ordered.

*Respondent disbarred.*