(No. 49241.—

*In re* HARRY B. MADSEN, Attorney, Respondent.

*Opinion filed October 5, 1977.*

DOOLEY and CLARK, JJ., dissenting.

Jack Toporek, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

James R. Marschewski, of Madsen & Associates, of Park Ridge, for respondent, and Harry B. Madsen, *pro se.*

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The Review Board of the Attorney Registration and Disciplinary Commission recommended that respondent, Harry B. Madsen, who was licensed to practice in Illinois on November 21, 1960, be suspended from the practice of law for two years and until the further order of the court. The original complaint filed by the administrator of the attorney discipline system charged that respondent and two associates had mailed to approximately 2,090 of their clients a two-page communication entitled "Tips from your Lawyer for 1973" and a pamphlet published by the Illinois State Bar Association styled "Wills, Their Importance and Why You Should Have One," each copy of which bore the name of respondent's firm, its address and telephone number. It was charged that the communication contained "professionally self-laudatory statements calculated to attract lay clients," gave "unsolicited advice to laymen," "suggested the need of the respondents' legal services," and that it constituted "the solicitation of professional employment by advertising."

The Hearing Board allowed respondent's motion to sever and set the case for hearing. During a prehearing

conference held at the offices of the attorney disciplinary system respondent made certain statements to his former associates. Following this occurrence the complaint was amended by adding count II, which charged that respondent threatened that if his two former associates testified in the proceeding he would submit evidence that their conduct had been unethical, that they were guilty, "on a civil basis," of contractual violations and of violations of the Criminal Code. After rather lengthy prehearing activity the matter was heard by a hearing panel which recommended that respondent be suspended from the practice of law for a period of three years. Respondent filed exceptions. The Review Board remanded to the Hearing Board with directions that further proceedings be held, and that it be assigned to a hearing panel other than that which had previously heard the matter. Following the filing with the Hearing Board of a number of motions and of actions in both the State and Federal courts, the matter was heard by another panel of the Hearing Board. The Hearing Board concluded that although the conduct charged in count I was improper it did not merit the imposition of sanctions. It found that the charges contained in count II were proved by clear and convincing evidence and recommended that respondent be censured. Both respondent and the Administrator filed exceptions, and following oral argument and the filing of briefs the Review Board recommended that respondent be suspended from the practice of law for a period of two years and until the further order of the court.

The first document described in count I was entitled "Tips from your Lawyer for 1973." In the first paragraph it requested the addressee to advise respondent's firm if the address on the envelope was not correct "so that we can note your important files accordingly." The second paragraph advised that wills should be reviewed at least every two years and stated that the firm's records

indicated that the last review of the client's will was with reference to a file opened on a stated date and bearing a designated number. The next paragraph stated that the firm engaged in "wide general practice," that in the preceding year it had processed 1,149 files in 12 areas of general practice. In succeeding paragraphs it warned of the pitfalls of out-of-State land investments, advised the client as to his rights in the event of arrest, contained a *caveat* as to purchasing property in Wisconsin, the pitfalls of franchises, advised further that there were means of avoiding probate, that certain benefits could be derived from incorporating a business, that the firm was available to aid in real estate transactions, and concluded with some general advice concerning stopping payment of checks, checking driver's licenses, and descent and distribution in the event that one died without a will. It offered the services of attorneys from the office to lecture "on a wide range of topics" to business, professional and social organizations, and stated that an established client of the office could feel free to call for brief legal advice for which he would not necessarily be billed.

The occurrence out of which count II arises took place at the offices of the disciplinary system. The Administrator had issued subpoenas for respondent's two former associates who had been charged jointly with him with the misconduct alleged in count I. Respondent caused subpoenas to issue to them returnable approximately one hour prior to the time when the hearing was to commence. He had requested by telephone that the Administrator and the Administrator's counsel be present. At that time, in the presence of respondent's secretary, his then counsel, the assistant administrator and the counsel for the Administrator, respondent advised his two former associates that he knew that they had been subpoenaed, that if they would decline to testify, although he could not be forced to testify, he would take the stand voluntarily and admit

to the mailing of the documents described in count I and explain the manner in which the mailing list had been selected. He stated that if they declined the offer he would find it necessary to impeach them and that in the course of the impeachment, by cross-examination and introduction of documents, he would show that they had been guilty of violations of the Canons of Ethics, their contractual obligations to him, and the Criminal Code.

The hearing panel found that respondent was guilty of violating Disciplinary Rule 1—102(A)(1), which proscribes the violation of a disciplinary rule, in that he had violated Disciplinary Rule 7—105(A), which provides: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." It pointed out that the violation "arose in an atmosphere of bitterness that was existing between the respondent and his two former employees" and that all of the acts of misconduct were done "openly in the presence of the assistant Administrator of the Disciplinary Commission and of the chief counsel for the Disciplinary Commission." It concluded that no sanctions should be imposed by reason of the mailings charged in count I but that the evidence showed that one of the purposes of the conduct charged in count II was to dissuade his former associates from testifying "and this is a circumstance which cannot be countenanced in the practice of law." It recommended that respondent be censured.

The Review Board concluded that the violations of the disciplinary rules charged in count I were sufficiently serious "to warrant censure if only this one Count were involved here." Concerning the allegations contained in count II it concluded that respondent's acts were highly prejudicial to the administration of justice and were designed to attempt to prevent witnesses from testifying. The Review Board concluded that respondent's conduct "was inimicable to the integrity of the legal profession and

adversely reflected on his fitness to practice law." It modified the recommendation of the Hearing Board and unanimously recommended that respondent be suspended from the practice of law for two years and until the further order of the court.

Respondent contends that the finding that he had violated Rule 7—105(A) is not supported by clear and convincing evidence. We do not agree. Respondent's actions, under the circumstances shown, were clearly improper. The record shows, however, that respondent's statements were made in the presence of the assistant administrator of the disciplinary system and its general counsel and there was no surreptitious effort to influence or intimidate the witnesses. Although we do not approve or condone respondent's conduct, we conclude that it does not justify the imposition of the severe sanction recommended by the Review Board.

Concerning the alleged impropriety of the mailing of the "tip sheet" and the pamphlet, we have concluded that the letter contained information of value and did not, under the circumstances, constitute an improper effort to solicit business. We agree with the conclusion of the hearing panel that this count alone would not warrant severe discipline and add parenthetically that in view of the recent decision of the Supreme Court in *Bates v. State Bar,* 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691, a question may indeed exist whether respondent's conduct would permit the imposition of sanctions.

Respondent contends that the hearing panel erred in admitting testimony of his former associates concerning the fact that, during the pendency of this proceeding, he had filed disciplinary charges against them. He argues that the "testimony severely damaged the respondent's defense and as a result was reversible error." We have examined the authorities cited, and the transcript, and conclude that the admission of the testimony was not error.

Respondent has devoted a portion of his brief to an attack on the attorney disciplinary system. He describes the system as "EXECUTIVE in that it prosecutes; JUDICIAL in that it tries cases; and LEGISLATIVE in that it selectively labels as violations fact situations not contemplated by any of the disciplinary rules." He charges too that the Commission now "operates as THE SUPREME COURT wielding powers the Court itself does not have by vigorously prosecuting anew a previously adjudicated matter without meeting the test of *Neff v. George,* 1936, 364 Ill. 306, by showing that serious detriment is thereby likely to arise prejudicial to the public interest." Respondent states that the current procedures of the Commission which prohibit an accused from investigating into other files and other proceedings before the Commission violate the equal protection clause of the United States Constitution. He asks that the court "find that the veil of secrecy surrounding all actions before the Attorney Registration and Disciplinary Commission is a violation of the equal protection clause."

The record shows that respondent filed numerous motions, many of which were repetitive, and all of which were considered and ruled upon by the hearing panel prior to commencement of the hearing. On respondent's motion, the hearing was made public, and we fail to see in what manner respondent was prejudiced by his inability to investigate files of other proceedings before the disciplinary commission.

During the pendency of these proceedings respondent, as plaintiff, filed an action in the United States District Court for the Northern District of Illinois against Carl H. Rolewick, the Administrator of the Attorney Registration and Disciplinary Commission, the Illinois State Bar Association and "John Doe." The complaint alleged that John Doe, described "as an otherwise unidentified individual," composed and forwarded an anonymous unsigned com-

plaint concerning the mailing of the documents described. It alleged various violations of the Canons of Ethics on the part of defendant Rolewick and of the chief counsel for the disciplinary commission, that defendant Rolewick and his agents have "given comfort and encouragement to persons who are sworn witnesses against respondent" (his former associates) by failing to initiate any investigation or administrative procedures concerning their misconduct; that Rolewick prevented respondent from discovering certain information and particularly the motivations which led to the filing of the complaints against him; and that Rolewick's pattern of action has been "arbitrary, unfair and unreasonable." He alleged damages in the nature of expenses incurred and fees lost totaling approximately $20,000 and prayed judgment in the amount of $29,231.29 plus costs, punitive damages, and the issuance of a permanent injunction. Although the record does not show when and in what manner the dismissal was effected, the action was dismissed sometime during the pendency of this proceeding.

While this matter was pending before the Hearing Board, respondent, as attorney for "Robert L. Gottschalk, on behalf of himself and all other clients of Harry B. Madsen similarly situated," filed in the circuit court of Cook County a complaint against Carl H. Rolewick, Administrator of the Attorney Registration and Disciplinary Commission, and the Illinois State Bar Association, alleging many acts of misconduct and seeking to enjoin certain alleged improper actions. On defendants' motion, the cause was dismissed.

Although not made the subject of an additional charge, we find disturbing the timing of the filing of the actions in the United States District Court and the circuit court. Although respondent was entitled to vigorously defend against the disciplinary proceeding and raise any factual, legal or constitutional issues appropriate to the

defense of the charges, we find his conduct similar to that of the respondent attorney in *People ex rel. Kunce v. Hogan,* 67 Ill. 2d 55. Hogan, following conviction but before sentencing of his client, joined the trial judge as a party defendant in an action filed for the client. Hogan was found guilty of contempt, and in considering whether the specific intent in filing the action was sufficiently proved by the evidence, we held that a contemptuous state of mind may be inferred from the action taken and from the proof of the surrounding circumstances.

In the context of the proceedings which had preceded the filing of the suits, and considering the time when they were filed, it would appear that their purpose was in some manner to influence or intimidate the Administrator in the prosecution of this action. In view of the history of this case, which shows that the second charge arose out of conduct which occurred while the matter was pending on count I of the complaint, we can understand why the Administrator did not refer the question of the propriety of respondent's action in filing the two suits to another panel of the Inquiry Board.

From our review of the entire record we agree with the Hearing Board and the Review Board that the conduct of the respondent would serve to bring the legal profession into serious disrepute. The purpose of a disciplinary proceeding is to safeguard the public and maintain the integrity of the legal profession. (*In re Smith*, 63 Ill. 2d 250.) Determination of the appropriate sanction to be imposed, however, is difficult, and as we said in *In re Andros,* 64 Ill. 2d 419, 425-26, "While a degree of uniformity in the application of attorney discipline is desirable, each case must still be determined on its own merits."

The testimony and exhibits show that respondent is a lawyer of considerable ability who displays exceptional skills in the field of law office organization and manage-

ment. The record shows, however, that despite his ability and experience he has failed to comprehend the impropriety of either the conduct charged in count II or the filing of the suits in the circuit and district courts. On the contrary, the record, briefs and argument reflect an attitude of self-righteousness and rationalization of the actions taken. We conclude that only a brief period of suspension will demonstrate to respondent both that his conduct was improper and that the impropriety was serious, and he will, therefore, be suspended for a period of 30 days.

*Respondent suspended.*

MR. JUSTICE DOOLEY, dissenting:

We do not believe this case justifies discipline. In our opinion a grave injustice has been done respondent.

Here the conduct of the Attorney Registration and Disciplinary Commission is certainly no cause for applause. This court, however, has compounded the Commission's wrong. After discussing the two charges on which respondent was tried, the court has considered a matter, not the subject of a complaint, of which respondent had no notice, hearing or opportunity to present his side, in violation of our Rule 753(b) (65 Ill. 2d R. 753(b)) that "[t]he complaint shall reasonably inform the attorney of the acts of misconduct he is alleged to have committed." This is frightening when it is remembered that this court, in most instances, is the last bastion of that elementary foundation of justice, due process.

The proceedings before the Commission were bizarre to say the least. Count I, more properly termed "round 1," consisted of charges that Madsen and two associates, Jancovic and Joost, sent out a brochure allegedly containing self-laudatory statements and giving unsolicited legal advice.

This was a publication of the Illinois State Bar Association, and it was from this reputable group that the numerous copies were obtained. Respondent, in requesting the brochures, advised the State Bar Association of their intended use. Such "advertising" allegedly was unethical. It was undisputed that this bar publication was mailed only to clients and that no legal business was generated by it. We fail to perceive how mailing an Illinois State Bar publication to one's clients can be improper.

Apart from the recent United States Supreme Court decision in *Bates v. State Bar* (1977), 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691, we do not believe this was improper. The Code of Professional Responsibility adopted by the American Bar Association and referred to in *In re Spencer* (1977), 68 Ill. 2d 496, 500, as well as by the United States Supreme Court in *Bates* (433 U.S. 350, 369, 53 L. Ed. 2d 810, 826, 97 S. Ct. 2691, 2700-01), recognizes that "it is not improper for a lawyer to volunteer such advice and render resulting legal services to *** former clients (in regard to matters germane to former employment), and regular clients." ABA Code of Professional Responsibility EC 2—4 (1976).

Formal Opinion No. 213 of the American Bar Association Committee on Professional Ethics (1941), decided under the predecessor of the current code, the Canons of Professional Ethics, Canon 27, involved the propriety of a patent firm circulating a pamphlet entitled "Law News Bulletin." It included significant features of current legislation, administrative rules, and important decisions in the patent field. The circumstance was that there was no impropriety in a lawyer advising his regular clients on anything which may affect the clients' interest so long as the communication is limited to such information.

In *In re Ratner* (1965), 194 Kan. 362, 399 P.2d 865, amongst other charges there, the respondent was charged

with soliciting law business by newsletters sent to the officers of a union, whom respondent represented. The court, in the opinion discharging respondent, observed:

"The newsletters, by means of which respondents are alleged to have advertised their wares, were sent to the officers of union clients represented by their firm. Several of the letters are in evidence. They contain no reference to any cases handled by the respondents. Their contents are confined to rulings of boards, commissions and courts on problems of interest to union labor, together with proposed and completed legislation important to the Brotherhood, and other items which might affect unions and their members. The respondents cite Opinion 213 of the Committee of Professional Ethics and Grievances as permitting such practice. After studying this opinion, we agree that sending of newsletters of the above type to regular clients does not offend Canon 27." 194 Kan. 362, 371, 399 P.2d 865, 872-73.

So here the letters were not sent to third parties, but only to past and present clients of respondent's firm. More than that, these were published under the aegis of the State Bar Association—a circumstance indicative of their intended purpose, to aid the public.

Probable jurisdiction was noted on October 4, 1976, in *Bates v. State Bar* (1976), 429 U.S. 813, 50 L. Ed. 2d 73, 97 S. Ct. 53. Yet, on December 13, 1976, in its "Report and Recommendation of the Review Board to the Supreme Court," the Review Board stated: "The conclusions as to Count I are affirmed. This Board considers the Count I violation of the Disciplinary Rules to be sufficiently serious to warrant censure if only this one count were involved here." Thus, it was well over one month after it was known that the issue of advertising by lawyers

would be decided by the United States Supreme Court that respondent was censured on the advertising count. Of course, this involved a first amendment right, and it is our duty under the fourteenth amendment to protect such rights as interpreted by the United States Supreme Court. (See *Bigelow v. Virginia* (1975), 421 U.S. 809, 811, 44 L. Ed. 2d 600, 605, 95 S. Ct. 2222, 2227.) The Attorney Registration and Disciplinary Commission certainly must have been aware of the Code, canon, and opinions, as well as the trend of the law towards advertising reflected in *Bates v. State Bar* (1976), 429 U.S. 813, 50 L. Ed. 2d 73, 97 S. Ct. 53.

We note that we do not suffer from monumental naivete. What has the Attorney Registration and Disciplinary Commission ever done about the self-laudatory articles about certain influential members of the bar? Some are obviously subject-generated. Most exceed what will be permissible under the broadest advertising standards following *Bates*. These "ads" are directed to the public, not clients, to attract business. In some instances the purpose is to give stature to someone without it. The average newspaper reader senses the nature of these write-ups. Yet no charge of impropriety has ever been leveled in that area.

Here respondent is a neighborhood practitioner. He is a noninfluential member of the bar. When he mails a bar association brochure only to clients from whom he admitted he obtained no legal business, he is hailed before the Disciplinary Commission on an apparently anonymous complaint. Unfortunately, this is but another of justice's injustices—a characteristic of the administration of justice from time immemorial. It always seems there are two standards: one for the influential, another for the noninfluential; one for the powerful, another for the powerless; and one for the highly respected, another for the nondescript. The differentiation in standards runs the long litany

descriptive of differences in society.

Count II, or more appropriately "round 2," arose out of the filing of count I. Jancovic and Joost, Madsen's associates, were, as we have noted, respondents to count I. Jancovic and Joost each had signed the brochure, "Tips From Your Lawyer for 1973." They entered into a stipulation with the Attorney Registration and Disciplinary Commission, which in effect was an admission of guilt. After Jancovic and Joost had made their admissions, Madsen moved that his case be severed from theirs. Strangely enough, there was a finding of "no violation" and a recommendation of "no discipline" as to Jancovic and Joost. The Administrator took no exceptions to these findings, but nonetheless continued to prosecute respondent under count I.

On February 13, 1975, Jancovic and Joost, who had been subpoenaed by respondent, were advised by respondent in the presence of the assistant Administrator of the Commission, as well as its chief counsel, that he would testify as to the documents and answer whatever questions might be asked. He stated he would impeach Jancovic and Joost, showing that they had been guilty of unethical conduct, and violated their contractual obligation with him, and also the Criminal Code. The chief counsel for the Commission, presumably with a consciousness of respondent's due process rights, immediately advised the hearing panel as follows:

"A few moments ago, the respondent in a conversation with Mr. Oswald and myself and two of my witnesses made serious *threats* against those witnesses if they were so much as to testify in this case. I propose to initiate a new complaint against the respondent. For that reason, I would like to have time to go back to the Inquiry Board for that purpose so that I can add another count to this complaint and then try the case all at one

time."

Count II was an overreaction by hypersensitive commission personnel. No witness was necessary to prove count I. Respondent had admitted the charges in his answer and in response to the Commission's request for admissions of fact. The testimony of Jancovic and Joost in nowise changed the proof as to count I. How could respondent be intimidating witnesses when he had already admitted the substance of the charge of count I in the pleadings, and stated he himself intended to so testify?

But the ferocity with which the Commission pursued the respondent becomes manifest from a letter from its chief counsel dated February 26, 1975, and directed to a member of an inquiry panel. In this, it is stated:

> "There has been a long delay in the filing of the hearing panel's report, but I am now informed that no discipline will be recommended as to Joost and Jancovic and I am in accord with this and will file no exceptions.
>
> Madsen is something else. I enclose a copy of some of the items in the record of his case together with memorandas by myself, Joost and Jancovic relating to Madsen's conduct on the date his case was heard. John M. Oswald has read these memorandas and will confirm the facts related.
>
> *We expect to bring Mr. Madsen's conduct to the attention of the State's Attorney,* but I also request that you vote an additional complaint against him which I will then add to the pending complaint. I suggest that you may conclude that he has violated DR 1—102(A)(3), (5) and (6) in addition to his violation of Ch. 38, Sec. 32—4(b)." (Emphasis added.)

Madsen's conduct was brought to the attention of the State's Attorney, who, in his wisdom, apparently wanted no part of it.

The Administrator had no authority to refer this matter to the State's Attorney. Our Rule 752 (58 Ill. 2d R. 752) provides that he shall investigate the conduct of attorneys; assist each Inquiry Board in its investigations;

employ certain personnel; discharge unsatisfactory personnel; and maintain such records as the Commission prescribes. The office of Administrator for the Attorney Registration and Disciplinary Commission does not cloak him or his chief counsel with any powers of a prosecutor. This is but one of many instances, a study of the record makes obvious, of some personal enmity towards this member of the bar by certain commission personnel. Need it be said that such an attitude aids neither the function of the Attorney Registration and Disciplinary Commission, nor the duties of this court?

The proceedings which followed were a shambles. On June 17, 1975, the amended complaint consisting of count I and count II was mailed. Under Rule 5.1 of the Commission, the respondent has 28 days within which to answer or otherwise plead. Rule 6.2 of the Commission also provides that all discovery shall be completed not later than 14 days prior to the date set for hearing. The Commission, however, with a fine disregard for its own rules, persisted in commencing the hearing on June 30, 1975, 13 days after the date of mailing and before the respondent's pleading was due, and at a time when discovery was impossible.

On June 25, 1975, in an effort to prepare for the hearing of June 30, an employee of the Commission, witness to what occurred on February 13, 1975, was subpoenaed. However, the subpoena was quashed because no witness fee was paid and it was not within a reasonable time prior to the taking of the depositions. Actually, all that was requisite was a notice, not a subpoena. Rule 6.1 of the Commission provides that discovery practice shall be in accordance with the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 1 *et seq.*) and the Supreme Court Rules. Supreme Court Rule 204(3) (58 Ill. 2d R. 204(3)) provides that service of notice of the taking of a deposition of a person who is an employee of a party is sufficient to

require the appearance of the deponent. No subpoena was necessary under this rule of court requiring production of full-time employees of the Commission. The Commission's duty to disclose is no narrower than that of the attorney. The discovery provisions of the Civil Practice Act and rules of this court bind both.

Notwithstanding respondent's motion to continue the hearing to a date beyond 13 days after he had received the complaint, in accordance with the rules of the Commission, the matter went to trial. Respondent's motion for a continuance was not ruled upon until the prosecution had finished its case.

On October 16, 1975, the Hearing Board determined that as to count I respondent be censured, and as to count II that he be suspended from the practice of law for a period of three years.

Respondent appealed to the Review Board, which recognized that the hearing of several months had been a futility because of the hearing panel's violation of the Commission's rules. The cause was remanded to the Hearing Board with directions that it be assigned to a new hearing panel for further proceedings applicable to all matters relevant to the second amended complaint filed June 17, 1975, which, of course, consisted of two counts. Such inherently erroneous proceedings against a professional man, whose vocation hangs in the balance during the pendency of the charges, cannot be justified.

On remand for a new hearing, respondent was unsuccessful in obtaining intelligible answers on the oral depositions of the Administrator and the chief counsel of the Commission. Finally, on April 30, 1976, he obtained an order from the hearing panel for the Administrator and his chief counsel to answer certain questions.

On July 14, 1976, after a second complete hearing, the panel stated with reference to count I that it would warrant discipline, and as to count II that the panel

recommended censure.

Viewed as a whole, the proceedings before the Commission were unusual—a charitable term. The Administrator is without power to prosecute selectively. There is no authority to grant immunity to witnesses. While this term was not employed, Jancovic and Joost, by conceding their guilt under count I, got off with "no discipline." Nor is it part of the Administrator's function to urge prosecution by the State's Attorney of a lawyer before him. His function is to aid this court in disciplining members of the bar. His only powers are disciplinary in nature. (See Supreme Court Rule 751, and Rule 1.1 of the Rules of the Attorney Registration and Disciplinary Commission.) Above all, the Commission should adhere to its own rules. Commencing a hearing 13 days after a new complaint was mailed was clearly unreasonable.

The Attorney Registration and Disciplinary Commission has broad powers. Its responsibilities are commensurate with those powers. We believe arrogance and irresponsibility were demonstrated here. Neither is part of the Administrator's duty. Just as the individual citizen cannot withstand the power of an autocratic government, so no individual lawyer can withstand an autocratic Attorney Registration and Disciplinary Commission. Count I should never have seen existence. Without it there would not have been this comedy of errors.

We now consider the reference in the majority opinion to two lawsuits. What deeply disturbs us about these matters is that they were not part of the complaint before the Commission under our Rule 753(b). Respondent was given neither notice of such a charge, nor an opportunity to be heard. No consideration of nor reference to these lawsuits was proper if respondent was to be accorded due process—the fundamental concept of fairness.

The right of due process is so fundamental that its genesis is in the natural law. J. Roland Pennock's introduc-

tion to the recent work, *Due Process: Nomos XVIII,* notes:

> "*** A variety of streams of thought, some new and some traditional, fed the stream of evolving due process interpretation. All sought 'justice.' But what is justice? A venerable historical tradition comes down to us under the name of natural law, with its more modern offshoot of natural rights. In England today, the term 'natural justice' is perhaps to similar effect, but is less freighted with history. Justice Frankfurter, frequently attacked by Justice Black for importing into due process interpretation the 'accordionlike' qualities of natural law, in fact attempted to combine history and discretion. [*Rochin v. California* (1952), 342 U.S. 165 (Frankfurter's majority opinion and Black's concurring opinion).] He sought the best of the 'Anglo-Saxton tradition,' but at the same time attempted to blend it with a sympathetic sensitivity to current trends of thought regarding justice. Or perhaps what his ethical antennae sensed was what Edmund Cahn called the 'sense of injustice.' " J. Pennock & J. Chapman, *Due Process: Nomos XVIII* at xvii (N.Y.U. Press 1977.)

Admittedly due process is an ancient and well-established doctrine. In *In re Ruffalo* (1968), 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222, an attorney was disbarred on a charge not originally made. During the course of the hearing, certain amendments were added alleging payment to Michael Orlando for and in preparation of suits against Orlando's employer. In a reversing opinion the United States Supreme Court held the procedure employed violated the attorney's fundamental right to due process:

> "Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. [Citations.] He is accordingly entitled to procedural due process, which includes fair notice of the charge. [Citation.] It was said in *Randall v. Brigham,* 7 Wall. 523, 540, 19 L. ed. 285, 293, that when proceedings for disbarment are 'not

taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence.' Therefore, one of the conditions this Court considers in determining whether disbarment by a State should be followed by disbarment here is whether 'the state procedure from want of notice or opportunity to be heard was wanting in due process.' [Citation.]

In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until *after* both he and Orlando had testified at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, 'Such procedural violation of due process would never pass muster in any normal civil or criminal litigation.' [Citation.]" (390 U.S. 544, 550-51, 20 L. Ed. 2d 117, 122, 88 S. Ct. 1222, 1226.)

In Ruffalo's case the charges were made during the hearing process. Here the matter considered was never a part of a charge, and there was no hearing on it. These were never considered by the Inquiry Board, the hearing panel or the Review Board.

The fundamental fairness which is due process has been described:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657.

This court has long recognized that a party must not only receive notice of the charges against him, but be afforded the opportunity to be heard on such charges. *Durkin v. Hey* (1941), 376 Ill. 292, 300; *Bruce v. Department of Registration & Education* (1963), 26 Ill. 2d 612, 621; *People v. Peters* (1957), 10 Ill. 2d 577, 580.

As "the deliberations of the trial judge are limited to the exhibits offered and admitted in evidence and the record made before him in open court" (*People v. Rivers* (1951), 410 Ill. 410, 416), so this court cannot consider matters not in evidence and not part of the record before it (*People v. Scudder Buick, Inc.* (1971), 47 Ill. 2d 388, 390-91; *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 415; *Gille v. Winnebago County Housing Authority* (1970), 44 Ill. 2d 419, 427).

More than that, this record adequately demonstrates why suit was filed in the United States District Court. It charged the Commission with violation of its own rules, harassing the respondent by subjecting him to seven different boards at great personal expense, and questioned the constitutionality of the conduct of the Commission. The filing date was April 5, 1976, after the Commission had conducted one hearing which the Review Board had to reverse for violation of the Commission's rules by the hearing panel. Prior to filing this action the Commission had accepted a finding of "no discipline" against Jancovic and Joost. So also, through its chief counsel, it had suggested to the Inquiry Board that Madsen's matter be turned over to the State's Attorney of Cook County. The Commission had refused to give Madsen the name of the complainant, although its rules provide that charges from persons other than members of an inquiry board shall identify the person making the charge (Rule 1.2 of the Rules of the Attorney Registration and Disciplinary Commission). Respondent had been denied discovery. We believe the conduct of the Commission amply justified

resort to the courts.

We are equally concerned by this statement in the majority opinion:

"The record shows that respondent filed numerous motions, many of which were repetitive, and all of which were considered and ruled upon by the hearing panel prior to the commencement of the hearing." (68 Ill. 2d at 479.)

Each of these motions was within the confines of legitimate advocacy. Is a lawyer to be criticized for making them? It will be a sorry day in the administration of justice when the courageous advocate is penalized because he employs the tools the law allows. The fearless and courageous advocate is as important to the administration of justice as an independent judiciary. Without him all rights are mere abstractions. The outcome of the trial of Socrates, Joan of Arc, and Mary Queen of Scots could possibly have been different had a strong and fearless advocate appeared in their defense.

Particularly significant in this record is the absence of any evidence suggesting any amoral conduct on the part of respondent. There is no question of his integrity or fair dealing. It was stipulated that he was a "beneficent employer." So far as we can ascertain, Mr. Madsen is an honorable man, who has done nothing to injure anyone. He was the object of energumens on the Commission. He has been literally pilloried because he asserted his rights and questioned the procedures of the Commission. This seems obvious from the conclusion of the majority opinion: "[T]he record, briefs and argument reflect an attitude of self-righteousness and rationalization of the actions taken." 68 Ill. 2d at 482.

This day in another case (*In re Spencer*, 68 Ill. 2d 496), the discipline was "censure" as compared to a 30-day suspension here.

In that other case Spencer represented the executor in

proceedings in which a will was admitted to probate. Under the terms of this will Minnie Bielefeldt inherited the entire estate. A petition to contest the will was filed.

Without the knowledge of the executor, respondent, whose obligation it was to defend the will, accepted a retainer from Minnie Bielefeldt as well as a contingent fee agreement whereby he was to be paid one-third of any sum obtained by her from the estate, inclusive of the one-sixth of the estate to which she was entitled as an heir. Moreover, the contract provided Spencer was "appointed and designated by me in the case of my death to be the attorney for my estate."

Spencer filed an appearance in the will contest proceeding and did not withdraw as the attorney for the executor until more than three months after the petition to contest the will was filed.

A petition requiring the removal of the executor purportedly signed by Minnie Bielefeldt and notarized was filed, but respondent had forged her name without her consent. The petition had to be withdrawn because she was unwilling to proceed with the removal.

Substantial sums were involved. Respondent obtained $8,750 from Mrs. Bielefeldt and $5,635 from the estate. He later filed a suit against her and recovered an additional $14,000.

If the penalty of censure was appropriate there, then, were it in our power, a laurel wreath would be equally appropriate here. Respondent's right to a post of honor in the profession should not be questioned by these proceedings.

MR. JUSTICE CLARK joins in this dissent.