No. 53,967

STATE OF KANSAS, *Petitioner,* v. EARL C. MOSES, JR., *Respondent.*

(642 P.2d 1004)

Order of Public Censure filed April 3, 1982.

*Arthur E. Palmer,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, appeared on behalf of respondent.

*Roger Walter,* attorney for the Disciplinary Administrator, of Topeka, appeared on behalf of petitioner.

## ORDER OF PUBLIC CENSURE

On December 15, 1981, a duly constituted panel of the Board for Discipline of Attorneys filed its report with the Clerk of the Appellate Courts in which they found the respondent, Earl C. Moses, Jr., a member of the bar of this State, guilty of a violation of the Code of Professional Responsibility, DR 2-103. 228 Kan. cvi. The panel recommended that respondent receive public censure pursuant to Rule 203(a)(3). 228 Kan. xc. The respondent has filed no exceptions to the report of the disciplinary panel.

The report of the panel reads:

"REPORT OF HEARING PANEL

"THIS COMPLAINT, dated September 14, 1981, came on for hearing at 10:00 a.m. on November 18, 1981, at Topeka, Kansas, pursuant to assignment and notice. The panel of three attorneys for the hearing were duly appointed and consisted of John F. Stites, Chairman, David M. Mills and Tim Degginger, members.

"Roger N. Walter appeared as the attorney for the disciplinary administrator, hereinafter called Complainant. The Respondent appeared in person and by and through his attorney, Arthur E. Palmer, Topeka, Kansas.

"THEREUPON, all parties including the Respondent waived any objection to the panel as constituted and had no objection as to proper notice being given herein.

"THEREUPON, the parties announced that the parties hereto had entered into a Stipulation of Facts which had been duly signed by all parties herein and also by Arthur E. Palmer, attorney for Respondent. Said Stipulation of Facts was marked Complainant's Exhibit "1" and there was no objection to the introduction of said Stipulation of Facts into evidence.

"THEREUPON, the parties announced that there were no other preliminary matters which should be called to the attention of the Board.

"THEREUPON, Complainant rested.

"THEREUPON, Respondent was duly sworn in and gave evidence.

"THEREUPON, both parties rested and the attorney for Respondent argued to the panel.

"THEREUPON, there being no further evidence or statements, the panel took an adjournment and thereafter re-appeared with all parties appearing as before.

"THEREUPON, the panel made the following findings, conclusions and recommendations:

### "FINDINGS OF FACT

"1. That the Respondent on approximately May 15, 1981, sent out approximately 150 letters to persons whose names he had gathered from the Realtors Multiple Listing.

2. That the approximately 150 people whom letters had been sent to had not sought the Respondent's advice regarding his employment as a lawyer.

3. That by sending out the approximately 150 letters, copy of which is attached to the Formal Complaint, and the Stipulation marked Complainant's Exhibit "1", the Respondent recommended his own employment as a private practitioner.

### "CONCLUSIONS OF LAW

"By reason of Stipulation of Facts as entered by the parties hereto and by reason of the statements of Respondent, there is clear and convincing evidence that the Respondent was in violation of the code of professional responsibility, as set forth in DR 2-103 in that the Respondent recommended himself as a private practitioner to laypersons who had not sought his advice regarding employment as a lawyer.

### "RECOMMENDATIONS

"It is the unanimous opinion of the panel that the Respondent receive a public censure by the Supreme Court of the State of Kansas pursuant to Rule 203(a)(3).

DATED this 18th day of November, 1981."

The letter, on respondent's professional stationery clearly identifying him as an attorney, which respondent mailed to various named individuals who were in the process of attempting to sell their homes, following the personal and individualized salutation, reads:

"As homeowners of today, you are by now well aware of the harsh realities restraining the current real estate market. Inflation, unemployment, and high interest rates all combine to make selling a home a difficult prospect indeed.

"Selling your home 'By Owner', will not only save you thousands of dollars, but will increase your chances of selling by offering a lower, but fair, market price. However, many sellers are reluctant to do this — mainly because they feel inexperienced in the legal requirements and technicalities.

"As a real estate consultant with 33 years of experience, my $300.00 fee includes all the necessary paperwork, contracts, deeds, and related materials to assist you in selling your home. In addition, you will receive expert advice and any necessary consultations.

"If your house is listed, it's easy to terminate the listing contract by simply calling your broker and advising him you want to cancel your listing contract and have him send you the contract marked 'cancelled'.

"For additional information, call my office at 273-2392 for an appointment,

Monday through Friday.

Yours truly,
s/ Earl C. Moses, Jr.
Earl C. Moses, Jr."

On February 26, 1982, respondent and his counsel appeared before this court to present argument as to the nature of the discipline, if any, to be imposed. Able counsel for the respondent pointed out that the law on the question of restricting advertising by attorneys or other professionals is in a state of flux and urged this court to absolve the respondent of any violation of the Code of Professional Responsibility or to restrict any discipline imposed to private censure.

We fully recognize that the First Amendment rights of an attorney may be violated if a too restrictive approach is taken toward an attorney's right to advertise. *Bates v. State Bar of Arizona,* 433 U.S. 350, 53 L.Ed.2d 810, 97 S.Ct. 2691 (1977). The most recent pronouncement on the question by the United States Supreme Court is found in *In Re R.M.J.,* 455 U.S. 191, 71 L.Ed.2d 64, 102 S.Ct. 929 (1982). In that case the Supreme Court held that certain restrictions on advertising and direct mailing in the rules of the Missouri Supreme Court violated the attorney's First Amendment rights and reversed a decision of the Missouri court that the respondent should be disciplined by private reprimand. While it is true that personal solicitation by an attorney is a form of advertising, we do not believe all such solicitation is protected from reasonable regulation by the First Amendment to the United States Constitution. The United States Supreme Court has recognized a distinction between protected forms of advertising and direct solicitation. In *In Re R.M.J.* the court noted:

"In *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 462 (1978), the Court held that the possibility of 'fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct was so likely in the context of in-person solicitation, that such solicitation could be prohibited.'" 455 U.S. at 202.

Recent cases involving direct mailings include *Bishop v. Committee on Professional Ethics,* 521 F. Supp. 1219 (S.D. Iowa 1981); *Koffler v. Joint Bar Ass'n,* 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927 (1980), *cert. denied* 450 U.S. 1026 (1981); *Greene v. Grievance Committee,* 54 N.Y.2d 118, 444 N.Y.S.2d 883, 429 N.E.2d 390 (1981); and *The Florida Bar v. Schreiber,* 407 So.2d 595 (Fla. 1981).

It is argued that direct solicitation is nothing more than other forms of advertising protected by the First Amendment. The distinction between advertising, which may not be prohibited, and direct solicitation, which may, is a fine one but we are convinced such a distinction is justified. Traditionally, the prohibition against direct solicitation has been directed to the evils inherent in "ambulance chasing" and the detriment members of the public may suffer by such solicitation.

The solicitation in the instant case, while not being of the nature of ambulance chasing and hospital room solicitation, nevertheless is directed to a segment of the public which, under present economic conditions, is extremely vulnerable to a suggestion of employment that may or may not be advantageous to the individual homeowner. We are of the opinion that the concept of the regulation and restriction of personal solicitation is one which is not only viable but works to the benefit of the general public and to the fair administration of justice. Our Code of Professional Responsibility is patterned after that of the American Bar Association and DR 2-103 is comparable to the A.B.A. Code. We believe the prohibitions and restrictions set forth in the Code of Professional Responsibility in DR 2-103 are reasonable and necessary for the protection of the public and the fair administration of justice and as applied in this case are not invalid under the provisions of the First Amendment to the United States Constitution.

We hold that direct solicitation of a stranger by an attorney for employment for a particular legal matter violates the provisions of the Code of Professional Responsibility, DR 2-103, and is subject to discipline as provided by the rules of this court. We also find that the report of the panel in this case is reasonable and should be approved and adopted.

IT IS THEREFORE BY THE COURT ORDERED AND ADJUDGED that the report of the panel of the Board for Discipline of Attorneys be accepted and approved.

IT IS FURTHER BY THE COURT ORDERED that the respondent be and he is hereby disciplined by Public Censure, the costs herein are assessed to the respondent and the Reporter of the Appellate Courts is directed to publish this order in the official Kansas Reports.

Effective this 3rd day of April, 1982.