W. Boyd SPENCER, III

v.

The HONORABLE JUSTICES OF the
SUPREME COURT OF PENNSYL-
VANIA, etc., et al.

Civ. A. No. 82–4704.

United States District Court,
E.D. Pennsylvania.

Feb. 1, 1984.

As Amended Feb. 7, 1984.

W. Boyd Spencer, III, Philadelphia, Pa., pro se.

Howland W. Abramson, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

In this § 1983 action, plaintiff seeks a declaration that several provisions of the Pennsylvania Code of Professional Responsibility (Code) are unconstitutional and injunctive relief enjoining their future enforcement. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343(a)(3). Relief is authorized by 28 U.S.C. § 2201.

Plaintiff, a member of the bar of the Supreme Court of Pennsylvania, is a certified pilot and holds a master's degree in computer science. In an effort to concentrate his practice in the fields of computer law and aviation law, plaintiff wishes to communicate his credentials, through advertisements to the general public and direct mailings to targeted segments of the population and specifically named individuals with legal needs in these areas. Plaintiff contends that the challenged provisions of the Code limit the content as well as the time, place, and manner of lawyer advertising and/or solicitation in violation of the first and fourteenth amendments.

Defendants, through their exclusive power to supervise the conduct of Pennsylvania attorneys, adopted the Code and are responsible for its enforcement. Violation of any of the Code's disciplinary rules subjects a lawyer to several possible sanctions, including suspension or disbarment from the profession.

### I. Justiciability

Defendants argue that plaintiff has failed to assert a justiciable case or controversy as required by Article III of the Constitution and the express terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

The Supreme Court seems to have equated the Article III "case or controversy" requirement with standing. *See City of Los Angeles v. Lyons*, — U.S. —, —, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 684 (1983).[1]

---

1. This conclusion is not at odds with Circuit Judge Becker's formulation in *Democratic Party v. National Conservative Political Action Committee*, 578 F.Supp. 797 at 807, slip op. at 23 (E.D.Pa.1983) (three judge district court). Judge Becker there considered "ripeness" as an indispensable Article III requirement. I agree with that analysis, but I believe that "ripeness" is subsumed in the requirement of "threatened injury," discussed *infra*. *See* 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3532 at 239–40 (1975).

■ To acquire standing to sue under Article III, a plaintiff must possess "a personal stake in the outcome of the controversy." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). This requirement assures "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Id.; City of Los Angeles v. Lyons, supra,* — U.S. at —, 103 S.Ct. at 1665.

■ In determining whether a plaintiff has a sufficient personal stake in the outcome of a controversy, a court must examine whether he "personally has suffered some actual or threatened injury." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). In the context of declaratory judgments, the facts alleged must show a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). It is not necessary that a plaintiff first expose himself to arrest or prosecution, but the alleged threats of prosecution must be more than merely "imaginary or speculative." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).

■ Plaintiff alleges that he intends to engage in conduct proscribed by the disciplinary rules and, further, that his fear of threatened discipline or prosecution for any such violations is more than "imaginary or speculative."[2] Plaintiff has every reason to believe that the disciplinary rules he intends to violate would be enforced against him.

■ First, in *Adler, Barish, Daniels, Levin, etc. v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978), *appeal dismissed,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), the Supreme Court of Pennsylvania upheld the constitutionality of the disciplinary rule, challenged by plaintiff in the instant case, which proscribes all lawyers from recommending their own services to non-lawyers who have not sought their advice. *See also, In re Oxman,* 496 Pa. 534, 437 A.2d 1169 (1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982).

Second, defendants, in pleadings filed with and hearings held before this court, have steadfastly maintained that the challenged disciplinary rules are constitutional. For example, in response to ¶ 20 of plaintiff's complaint which alleges that plaintiff is precluded from use of direct mail advertising to solicit segments of the general population such as aircraft owners, pilots, and computer users, defendants answered "admitted to the extent that [the disciplinary rule] prohibits solicitation of said segments."

Third, the parties have entered into a stipulation precluding the Disciplinary Board of the Supreme Court of Pennsylvania from enforcing the challenged disciplinary rules against plaintiff during the pendency of this suit, leaving open the possibility that plaintiff could and would be disciplined when this suit is completed.

Fourth, the Professional Guidance Committee of the Philadelphia Bar Association, whose function it is to advise lawyers regarding what they may properly do under the Code of Professional Responsibility, stated in a 1980 opinion that it could not advise that one may safely dispatch an individually addressed letter to a stranger for the purpose of securing clients.[3]

2. Plaintiff cannot acquire standing by alleging that the challenged disciplinary rules may cause third parties to refrain from engaging in constitutionally protected speech. In *Bates v. State Bar of Arizona,* 433 U.S. 350, 380–81, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977), the Supreme Court held that the first amendment overbreadth doctrine does not apply to commercial speech. The Court reasoned that those advertising services for a profit are hardly enough to

risk prosecution or other sanctions to determine the exact contours of allegedly overbroad regulation.

3. Although an opinion of the Professional Guidance Committee is not binding on the Disciplinary Board of the Supreme Court of Pennsylvania, its opinion demonstrates that plaintiff is not alone in interpreting the disciplinary rules so as

884

Finally, the Disciplinary Board of the Supreme Court of Pennsylvania has actively enforced the rules in the past and there is every indication that it will continue to do so. Although I have been presented with no specific statistics as to how many lawyers were disciplined under each disciplinary rule, in 1982, sixty-three lawyers were sanctioned, including thirty-three disbarments and eighteen suspensions.

Thus, plaintiff harbors a real and legitimate fear of being disciplined for violating the Code of Professional Responsibility.

Further, plaintiff suffers present injury and an irretrievable loss of first amendment rights to the extent that he obeys the disciplinary rules and thus foregoes his right to engage in arguably protected speech. Plaintiff is thus placed, as was the hapless plaintiff in *Steffel v. Thompson, supra,* 415 U.S. at 462, 94 S.Ct. at 1217, "between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."

In presenting a justiciable case or controversy, plaintiff is not first required to violate the disciplinary rules and risk his legal career on the hope that his constitutional arguments will be accepted in defense of quasi-criminal proceedings.[4] This is especially true where the constitutionality of the rules will be reviewed by the very court which promulgated and adopted them, which is here vigorously arguing their constitutionality and which has already held them constitutional. *See Adler, Barish, Daniels, Levin, etc. v. Epstein, supra,* 482 Pa. 416, 393 A.2d 1175. In *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973), the Supreme Court found that Georgia physicians had standing to challenge the constitutionality of state abortion laws despite the fact that they had never been threatened with prosecution by state officials: "The physician is the one

against whom those criminal statutes directly operate ... [and the] physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Similarly, in *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), the Court stated that a plaintiff need not first expose himself to actual arrest or prosecution when he "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *See also Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (teacher seeking declaratory and injunctive relief did not have to await criminal prosecution to challenge the state's anti-evolution statute).

I therefore conclude that plaintiff possesses the requisite personal stake and interest in the outcome of this suit and, further, that there exists a substantial controversy between persons with adverse legal interests of sufficient immediacy and reality to warrant the exercise of jurisdiction by a federal court. This conclusion is supported by *Durham v. Brock,* 498 F.Supp. 213, 216–17 (M.D.Tenn.1980), *aff'd,* 698 F.2d 1218 (6th Cir.1982), a similar case in which a lawyer challenged the constitutionality of selected provisions of the Tennessee Code of Professional Responsibility. *See also Bishop v. Committee on Professional Ethics, etc.,* 521 F.Supp. 1219 (S.D. Iowa 1981), *vacated as moot,* 686 F.2d 1278 (8th Cir.1982) (court asserted jurisdiction without comment in a case in which a lawyer challenged the constitutionality of the provisions of the Iowa Code of Professional Responsibility restricting the content and means of lawyer advertising).

## II. Governing Law

In *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 762,

to prohibit direct mail solicitation aimed at specific addresses.

4. The Supreme Court has held that disciplinary proceedings against an attorney are quasi-criminal. *In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968).

96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976), the Supreme Court extended first amendment protection to speech which did "no more than propose a commercial transaction." A year later in *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977), the Court held that lawyer advertising is a form of commercial speech and, as such, it cannot be subjected to blanket suppression.

In *Bates*, two attorneys placed a newspaper advertisement listing their fees for certain legal services in violation of the Arizona disciplinary rules' absolute prohibition of any such lawyer advertising. The Court held that lawyers must be permitted to advertise their fees for certain "routine" legal services. *Id.* at 384, 97 S.Ct. at 2709. *Bates* focused on the first amendment's protection of the right of consumers to receive useful commercial information:

> The listener's interest is substantial: the consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue. Moreover, significant societal interests are served by such speech. Advertising, though entirely commercial, may often carry information of import to significant issues of the day. See *Bigelow v. Virginia*, 421 US 809, 44 L Ed 2d 600, 95 S Ct 2222 (1975). And commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system. See *FTC v. Procter & Gamble Co.*, 386 US 568, 603–604, 18 L Ed 2d 303, 87 S Ct 1224 (1967) (Harlan, J. concurring). In short, such speech serves individual and societal interests in assuring informed and reliable decisionmaking. [citing *Virginia Pharmacy Board v. Virginia Consumer Council*] 425 US at 761–765, 48 L Ed 2d 346, 96 S Ct 1817, at 1825–1827.

*Id.* at 364, 97 S.Ct. at 2699.

■ Of course, there is no constitutional protection for false, deceptive, or misleading advertising. *Id.* at 383, 97 S.Ct. at 2708.

The constitutionality of prohibiting in-person solicitation, as opposed to written advertisements, was decided in *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). In *Ohralik*, an Ohio attorney visited one accident victim in a hospital room where she lay in traction and another victim on the day she was released from the hospital soliciting their business. Both victims agreed to his representation under a one-third contingency arrangement but later discharged him and filed complaints with the local bar association. The Disciplinary Board of the Supreme Court of Ohio suspended the attorney for violating the disciplinary rules proscribing all lawyer self-recommendation.

In upholding the suspension, the Supreme Court held that in-person lawyer solicitation is deserving of less first amendment protection than the advertisement of routine legal services found protected in *Bates:*

> Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual.

*Id.* at 457, 98 S.Ct. at 1919 (footnote omitted). In upholding the regulation of in-person solicitation, the Court noted that the states have a legitimate and substantial interest in preventing those aspects of solicitation that involve undue influence, intimidation, overreaching, and other forms of misconduct. *Id.* at 462, 98 S.Ct. at 1921.

After *Bates* and *Ohralik*, it was clear that some forms of lawyer advertising and

solicitation constituted protected commercial speech, while, by the same token, some state regulation was permissible. In *Central Hudson Gas and Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980), the Court significantly clarified the scope and limitations of the first amendment protection afforded commercial speech. Striking down a New York regulation banning all advertising that promotes the use of electricity, the Court stressed the informational function of advertising and asserted that it has "rejected the 'highly paternalistic' view that government has complete power to suppress or regulate commercial speech." *Id.* at 562, 100 S.Ct. at 2349. People can serve their best interests only if they are well informed, which, of course, can only be achieved if the channels of communication are open rather than closed. *Id.* Even if advertising is incomplete, the receipt of some information is better than the receipt of no information at all. *Id.*

The Court stated, however, that the Constitution accords lesser protection to commercial speech than to other forms of protected expression, and since the first amendment's concern for commercial speech is based on the informational function of advertising, the government may ban all false or deceptive forms of communication. *Id.* at 563, 100 S.Ct. at 2350. But when communication is neither misleading nor related to unlawful activity, the state can regulate commercial speech only to advance or protect a substantial state interest, and then, only if such regulations are narrowly drawn. *Id.* at 564, 100 S.Ct. at 2350. In summarizing the analytical framework to be applied, the Court stated at 566, 100 S.Ct. at 2351:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must

concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

The constitutionality of disciplinary rules regulating attorney advertising and solicitation was again addressed in *In re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). In *In re R.M.J.*, a lawyer was charged with violating the Missouri disciplinary rules when he announced the opening of his office by mailing professional announcement cards to a selected list of addressees and in placing ads in newspapers and the yellow pages identifying the jurisdictions in which he was licensed to practice and listing his areas of practice.

Applying the four-part test announced in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n, supra*, 447 U.S. at 566, 100 S.Ct. at 2351, the Court struck down the state's regulation of the lawyer's advertising.[5] Since neither the identification of the jurisdictions in which the attorney was licensed to practice nor the listing of his areas of practice was shown to be misleading, such information could not be restricted in the absence of a substantial state interest, which the state failed to show. 455 U.S. at 205, 102 S.Ct. at 938. The Court noted that the mailing of the announcement cards presented a more troubling issue because the state has more difficulty supervising mailings than newspapers. The state, however, failed to demonstrate any such inability to supervise mailings and, in any event, an absolute prohibition of all such mailings was inappropriate. The state, for example, could supervise such mailings by requiring lawyers to file copies with a state advisory committee. *Id.* at 206, 102 S.Ct. at 939.

In conclusion, the Court held that

---

5. The lawyer was also charged with failing to include in his advertisements a disclaimer of expertise in any of his listed areas of practice. Because the lawyer did not challenge the constitutionality of the disclaimer requirement, the Court did not address the issue. 455 U.S. at 204, 102 S.Ct. at 938.

In sum, none of the three restrictions ... upon appellant's First Amendment rights can be sustained in the circumstances of this case. There is no finding that appellant's speech was misleading. Nor can we say that it was inherently misleading, or that restrictions short of an absolute prohibition would not have sufficed to cure any possible deception.... [A]lthough the States may regulate commercial speech, the First and Fourteenth Amendments require that they do so with care and in a manner no more extensive than reasonably necessary to further substantial interests. The absolute prohibition on appellant's speech, in the absence of a finding that his speech was misleading, does not meet these requirements.

*Id.* at 206–07, 102 S.Ct. at 939.

It is within the above legal framework that plaintiff's challenge to the Pennsylvania disciplinary rules must be examined.

### III. *Plaintiff's Challenge to the Pennsylvania Disciplinary Rules*

#### A. *Use of the Word "Experienced"*

Plaintiff alleges that the State's interpretation of DR 2–101(A) [6] prohibits him from advertising to or advising potential clients that he is an "experienced" pilot and/or an "experienced" computer programmer.[7] The State argues that any subjective characterization of plaintiff's background or credentials, such as "experienced" pilot, is inherently misleading and thus should be totally banned. I agree with the State.

The State has a substantial interest in maintaining professional standards among lawyers to protect consumers against the potential for misstatements and overstatements inherent in any subjective claims as to the quality of legal services or a lawyer's credentials. *See Bishop v. Committee on Professional Ethics, etc.,* 521 F.Supp. 1219, 1225 (S.D.Iowa 1981), *vacated as moot,* 686 F.2d 1278 (8th Cir. 1982). In *Bates v. State Bar of Arizona, supra,* 433 U.S. at 383–84, 97 S.Ct. at 2709–10, the Court, after noting that the public lacks sophistication with respect to legal services, stated that:

[M]isstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising. For example, advertising claims as to the *quality* of services—a matter we do not address today—are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction (emphasis added) (footnote omitted).

Claims using terms such as "experienced," "expert," "highly qualified," or "competent" are difficult for a layman to confirm, measure, or verify. A lawyer who has handled three or four tort or antitrust cases clearly is less "experienced" than one who has handled fifty, yet the term "experienced" would arguably be available to both. Rather than identify himself as an "experienced" pilot, plaintiff can convey his experience through the use of more objective information such as the number of

---

**6.** DR 2–101(A), provides that "No lawyer shall engage in, utilize, or allow any form of advertising that is knowingly false, fraudulent or misleading."

**7.** Plaintiff also alleged that DR 2–102(D) unconstitutionally forbids him from advertising or disclosing that he practices both law and another profession or business and that DR 2–102(E) unconstitutionally prevents him from advertising or disclosing that he has an earned degree or title which is not law related.

DR 2–102(D) provides that

A lawyer who is engaged both in the practice of law and another profession or business shall not so indicate on his letterhead, office sign, or professional card, nor shall he identi-

fy himself as a lawyer in any publication in connection with his other profession or business.

and DR 2–102(E) provides that

Nothing contained herein shall prohibit a lawyer from using or permitting the use of, in connection with his name, an earned degree or title derived therefrom indicating his training in the law.

Defendants have admitted that these disciplinary rules do not prohibit the advertisement of the above facts as long as such is not false, fraudulent, or misleading, and therefore no justiciable case or controversy is presented on this issue.

hours flown in various types of aircraft, his certification by the Federal Aviation Administration as a pilot in single engine planes, and his certification as a flight instructor in single and multi-engine aircraft. Similarly, a lawyer may describe the quality of his legal services only through the use of objective, verifiable terms such as the number of cases handled in a particular legal field or the number of years in practice.

■ Thus, the State's prohibition of the use of terms which subjectively evaluate a lawyer's credentials or the quality of his services directly advances the State's substantial interest in protecting consumers from misleading claims, and is not more extensive than necessary to serve that interest. *See Central Hudson Gas & Elec. Corp. v. Public Service Comm'n, supra,* 447 U.S. at 566, 100 S.Ct. at 2351.

### B. *Direct Mailing*

Plaintiff next challenges the constitutionality of DR 2–103(A) and DR 2–104(A), which ban all solicitation by lawyers.[8] DR 2–103(A) provides that

A lawyer shall not recommend employment, as a private practitioner, of himself, his partner, or associate to a nonlawyer who has not sought his advice regarding employment of a lawyer.

and DR 2–104(A) provides that

A lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice.... [9]

Plaintiff seeks to use direct mail to solicit the business of aircraft owners, aircraft pilots, computer users, computer operators, and others. Such mailings would be individually addressed, and, in many circumstances, would be directed at those who plaintiff has learned may have a legal problem or otherwise may be in need of a lawyer. Defendants respond that plaintiff's proposed direct mailing is permissible to the extent it constitutes advertising, but is prohibited to the extent it constitutes solicitation. The vagueness of this answer is perhaps a sequitur of the conflicting disciplinary rules themselves. Whereas DR 2–101(A) permits lawyers to advertise as long as it is not false or misleading, DR 2–103(A) and DR 2–104(A) prohibit all lawyer self-recommendation and solicitation. Nowhere are the terms "advertising," "recommendation" or "solicitation" defined and, further, the body charged with the responsibility for creating, interpreting, and enforcing these rules—the defendants in this case—has refused to provide any interpretations or definitions which would solve the dilemma. Indeed, despite repeated questioning at oral argument, counsel for defendants was unable to draw any line of demarcation between solicitation and advertising. Thus, plaintiff is justifiably bewildered as to whether and under what circumstances direct mailing would constitute permissible advertising as opposed to impermissible solicitation. Certainly, if the enforcer cannot define what is being enforced, an alleged violator cannot know what is being violated.

■ Thus, DR 2–103(A) and DR 2–104(A), when read in light of DR 2–101(A), are unconstitutionally vague. A statute is void for vagueness when it fails to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden...." *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).[10]

---

**8.** Plaintiff also alleged that DR 2–102(C) unconstitutionally prevents him from requesting uncompensated third parties, such as flight instructors, airport operators, and computer dealers, to recommend his services. Defendants denied that such requests are interdicted, and thus no case or controversy is presented on this issue.

**9.** DR 2–104(A) provides certain limited exceptions which are not at issue in this case.

**10.** The degree of vagueness that the Constitution tolerates depends on the nature of the enactment, with a less strict vagueness test being applied when either (1) economic regulation is involved, (2) the statute contains civil as opposed to criminal penalties, (3) a scienter requirement is imposed, or (4) the exercise of

Even in the absence of a vagueness analysis, the blanket prohibitions of lawyer direct mail solicitation found in DR 2–103(A) and DR 2–104(A) cannot survive the four-part test of *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n, supra,* 447 U.S. at 566, 100 S.Ct. at 2351.[11] Under the first part of the test, it must be determined whether the expression is constitutionally protected, which, in the commercial speech area, requires that the expression "concern lawful activity and not be misleading." *Id.* The regulations banning all direct mail solicitation inevitably sweep within their prohibition some protected speech. And when protected speech is banned, the ban runs afoul of the first amendment.[12]

There is no doubt that some mail solicitation may be misleading or even false. There is equally no doubt that the state has a substantial interest in preventing such deception, but the state cannot throw the baby away with the bath water. It cannot prevent bad speech by prohibiting both bad and good speech. Although mailings may be difficult to supervise, it can be done, as suggested in *In re R.M.J., supra,* 455 U.S. at 206, 102 S.Ct. at 939, by requiring the filing of a copy of all mailings with a state advisory committee. *See also Bishop v.*

*Committee on Professional Ethics, etc., supra,* 521 F.Supp. at 1232; *Koffler v. Joint Bar Ass'n,* 51 N.Y.2d 140, 432 N.Y. S.2d 872, 877, 412 N.E.2d 927, 933 (1980), *cert. denied,* 450 U.S. 1026, 101 S.Ct. 1733, 68 L.Ed.2d 221 (1981).

The constitutionality of regulating commercial speech other than that which is false or misleading is determined by applying the remaining three parts of the *Central Hudson Gas* test. That is, it must be determined whether the state has asserted a substantial state interest in regulating the expression and, if so, whether the regulation directly advances the asserted interest and, further, whether the regulation is more extensive than is necessary to serve that interest. Defendants argue that the state has substantial interests in protecting the public from (1) an invasion of privacy; (2) undue influence and overreaching; and (3) conflicts of interest. I will evaluate each of these asserted interests separately.

1. *Invasion of Privacy.* It is true that some members of the general public may be offended or disturbed upon receiving unsolicited mail from lawyers. In upholding the right of a drug company to mail unsolicited contraceptive advertisements directly to homes, however, the Supreme Court held that the fact that protected com-

---

constitutionally protected rights is not at issue. *Hoffman Estates v. Flipside Hoffman Estates,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). The disciplinary rules at issue in this case contain none of these saving characteristics.

**11.** For cases upholding direct mail lawyer solicitation, *see e.g., Bishop v. Committee on Professional Ethics, supra,* 521 F.Supp. at 1230–32; *Koffler v. Joint Bar Ass'n,* 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927 (1980), *cert. denied,* 450 U.S. 1026, 101 S.Ct. 1733, 68 L.Ed.2d 221 (1981); *In re Appert,* 315 N.W.2d 204 (Minn. 1981); *Kentucky Bar Ass'n v. Stuart,* 568 S.W.2d 933 (Ky.1978); *In re Madsen,* 68 Ill.2d 472, 12 Ill.Dec. 576, 370 N.E.2d 199 (1977).

For cases finding direct mail solicitation subject to regulation, *see, e.g., Adler, Barish, Daniels, Levin, etc. v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978), *appeal dismissed,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979); *Allison v. Louisiana State Bar Ass'n,* 362 So.2d 489 (La. 1978); *State v. Moses,* 231 Kan. 243, 642 P.2d 1004 (1982).

**12.** The disciplinary rules' absolute prohibition of all lawyer direct mail solicitation is a content based restriction as opposed to a time, place, or manner regulation. A restriction is considered a time, place, or manner regulation only if it applies to all speech irrespective of content. *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). The disciplinary rules at issue here prohibit only mailings containing lawyer self-recommendation, not other forms of direct mail solicitation. *See Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 93–94, 97 S.Ct. 1614, 1618–1619, 52 L.Ed.2d 155 (1977), in which a regulation prohibiting the placing of "For Sale" signs on residential property but not signs with other messages was struck down as an invalid content based restriction. "That the proscription applies only to one mode of communication ... does not transform this into a 'time, place, or manner' case." *Id.* at 94, 97 S.Ct. at 1619.

mercial speech may be offensive to some does not provide a sufficient justification for its suppression. *Bolger v. Youngs Drug Products Corp.,* —— U.S. ——, ——, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469, 480 (1983). Whereas the target of in-person solicitation is a captive audience and cannot escape objectionable or offensive speech, the recipients of direct mail can avoid any affront to their sensitivities by simply throwing the letters in the trash can. *Id.; Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 542, 100 S.Ct. 2326, 2335, 65 L.Ed.2d 319 (1980).

I therefore conclude that the protection of the public against an invasion of privacy is not a substantial state interest.[13]

■ 2. *Undue Influence and Overreaching.* It is clear that states have substantial interests in protecting the public from undue influence, intimidation, and overreaching. *Ohralik v. Ohio State Bar Ass'n, supra,* 436 U.S. at 462, 98 S.Ct. at 1921. These interests, however, are not advanced by prohibiting all direct mailing. The evils of in-person solicitation—pressure, intimidation, an atmosphere demanding an immediate response, and the lack of an opportunity for comparison, reflection, or counter-education—permitting regulation in *Ohralik* simply are not present in the direct mail context. The recipient of a mailing has an adequate opportunity to investigate the lawyer, educate himself, and is under no obligation or pressure to respond. Even if the state could identify specific situations in which mail recipients were particularly susceptible or vulnerable to the persuasive influence contained in a lawyer's letter,[14] an absolute prohibition of

direct mailings would not be justified. Rather, direct mailings could be banned only in those identified circumstances.

■ 3. *Conflicts of Interest.* There is a substantial governmental interest in preventing conflicts of interest in attorney-client relationships. *Cf. In re Primus,* 436 U.S. 412, 436, 98 S.Ct. 1893, 1907, 56 L.Ed.2d 417 (1978); *Ohralik v. Ohio State Bar Ass'n, supra,* 436 U.S. at 461 n. 19, 98 S.Ct. at 1921 n. 19. Defendants do not suggest, however, how a conflict of interest could arise through direct mail solicitation. This is not to say that potential conflicts do not exist. In *Greene v. Grievance Comm.,* 54 N.Y.2d 118, 444 N.Y.S.2d 883, 429 N.E.2d 390 (1981), *cert. denied,* 455 U.S. 1035, 102 S.Ct. 1738, 72 L.Ed.2d 153 (1982), the Court of Appeals of New York, while permitting direct mail solicitation generally, upheld a prohibition of direct mail solicitation to real estate brokers seeking to have such brokers refer their clients to the soliciting lawyer for real estate closings and other legal services. The proscription was aimed at preventing the situation in which the lawyer's interests were more closely intertwined with the brokers' than with the client's.[15]

■ In the absence of any showing of how a conflict of interest would arise through direct mail solicitation, the State's total prohibition of such solicitation can not be sustained on that ground. To the extent the State can identify situations in which direct mail solicitation may cause conflicts of interest, regulation no more extensive than is necessary to prevent such conflicts is permissible.

---

**13.** Even were I to conclude that a substantial state interest was asserted, an absolute prohibition of all direct mailings would be far more extensive than necessary to advance such interest. The state could, for example, simply require the word "advertisement" to be stamped on the envelope so that those offended by such material would not even have to read it. *See In re R.M.J., supra,* 455 U.S. at 206 n. 20, 102 S.Ct. at 939 n. 20.

**14.** At oral argument, defendants identified the highly vulnerable state of patients in a mental hospital as one such possible situation. There

may also be situations in which letters containing threats could have such a coercive effect as to require regulation.

**15.** As examples, the court noted the situation in which "the lawyer's view of the marketability of title may be colored by his knowledge that the referring broker normally will receive no commission unless title closes" or the situation in which the lawyer will fail to negotiate the lowest commission to be paid to a broker (because the broker is an important source of the lawyer's income). 444 N.Y.S.2d at 889, 429 N.E.2d at 396.

In conclusion, the absolute ban on direct mail solicitation effected by DR 2–103(A) and DR 2–104(A) cannot be sustained. Direct mail solicitation can provide the public with useful information regarding legal rights, remedies, and services. Further, to prohibit lawyers from selecting as the recipients of their communications those who may be most in need of a lawyer's services would totally ignore the reason commercial speech is constitutionally protected—because it "serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system." *Bates v. State Bar of Arizona, supra,* 433 U.S. at 364, 97 S.Ct. at 2699. Finally, although direct mail solicitation may serve to increase the number of legal grievances and lawsuits, it is better to address a wrong through legal action than to suffer in silence.[16] *Id.* at 376, 97 S.Ct. at 2705; *In re Primus, supra,* 436 U.S. at 436–37, 98 S.Ct. at 1907.

## C. *"Recognized" or "Certified" Specialist*

Plaintiff next attacks the constitutionality of DR 2–105(B) which provides that any statement or announcement that a lawyer's practice is limited to one or more particular fields of law must be accompanied by a disclaimer that such lawyer is not recognized or certified as a specialist in those fields.[17]

Although the defendants do not identify what evils the disclaimer requirement

seeks to prevent, I assume the State is concerned that the public may misinterpret a listing of areas of practice unaccompanied by any disclaimer as an implied claim of expertise or specialization in those areas.[18] Plaintiff, on the other hand, argues that a statement that he or his law firm is neither recognized nor certified as a specialist may itself be misleading.

In protecting the right of lawyers to advertise routine legal services, the Supreme Court noted that a state could require a disclaimer to prevent misleading advertising:

> We do not foreclose the possibility that some limited supplementation, *by way of warning or disclaimer or the like,* might be required of even an advertisement of the kind ruled upon today so as to assure that the consumer is not misled (emphasis added).

*Bates v. State Bar of Arizona, supra,* 433 U.S. at 384, 97 S.Ct. at 2709. *See also In re R.M.J., supra,* 455 U.S. at 201, 102 S.Ct. at 935.

The Pennsylvania disclaimer requirement, however, is more extensive than necessary to prevent any misinterpretation from the disclosure of limited fields of practice. By requiring a lawyer to state clearly that he or his law firm is neither recognized nor certified as a specialist in any limited field of practice, DR 2–105(B) contains the possible implication that the advertising lawyer is not a recognized or certified specialist but that other lawyers

---

**16.** In addition, it should be noted that Pennsylvania Disciplinary Rule 2–109(A)(2) prohibits a lawyer from bringing frivolous claims:

(A) A lawyer shall not accept employment on behalf of a person if he knows or it is obvious that such person wishes to:

. . . . .

(2) Present a claim or defense in litigation that is not warranted under existing law . . . .

**17.** The full text of DR 2–105(B) provides:

A statement, announcement, or holding out as limiting practice to one or more particular fields of law or as concentrating practice in one or more particular fields of law does not constitute a violation of DR 2–105(A) [which

prohibits a lawyer from claiming that he is a recognized or certified specialist] if the statement, announcement or holding out is factually correct and clearly states that the lawyer or law firm is not recognized or certified as a specialist in the field or fields of law in which the lawyer or law firm limits or concentrates its practice; provided, however, no such disclaimer of recognition or certification shall be required of the lawyer or law firm if the publication in which the statement, announcement or holding out appears contains general information to the same effect.

**18.** There is at present no authority in Pennsylvania that certifies or otherwise recognizes specialists.

may be. *Cf. Lovett and Linder Ltd. v. Carter,* 523 F.Supp. 903, 907 (D.R.I.1981) (court held that law firm's statement that "we make no claim of expertise or specialization in these matters" is misleading because it is untrue). Such a negative implication may cause lawyers to decline to list any fields of concentration simply to avoid the requirement of including the damaging disclaimer. This would be unfortunate because useful and otherwise protected information concerning the nature of a lawyer's practice would be suppressed.

Thus, as presently worded, DR 2–105(B) is not the least restrictive means available to advance the substantial state interest, and therefore does not survive first amendment scrutiny as applied to plaintiff's proposed conduct.[19]

### D. *Advertising to Other Lawyers*

██ Finally, plaintiff attacks the constitutionality of DR 2–105(A)(3), which provides that

A lawyer available to act as a consultant to or as an associate of other lawyers in a particular branch of law or legal service may distribute to other lawyers and publish in legal journals a dignified announcement of such availability, but the announcement shall not contain a representation of special competence or experience....

Plaintiff attacks this rule on two grounds. First, he argues that it unconstitutionally denies him the right to advise other attorneys of anything more than his mere availability to consult in particular branches of law, such as his education or certification as a pilot. Second, plaintiff argues that the word "dignified" is unconstitutionally vague.

██ Although the state has the authority to regulate advertising that is inherently misleading, *In re R.M.J., supra,* 455 U.S. at 207, 102 S.Ct. at 939, "the determination whether an advertisement is misleading requires consideration of the legal sophistica-

tion of its audience." *Bates v. State Bar of Arizona, supra,* 433 U.S. at 383 n. 37, 97 S.Ct. at 2709 n. 37. Lawyers are capable of understanding, evaluating, and distilling legal advertisements and thus prohibiting plaintiff from making representations as to his background, education, and experience to other lawyers is unnecessary to advance any state interest and therefore unconstitutional.

Plaintiff also argues that the word "dignified" is unconstitutionally vague. He claims that in the absence of an adequate definition, he is without fair notice as to what type of announcements are prohibited. I disagree. The word "dignified" signals lawyers to use caution and restraint in formulating advertisements. *Bishop v. Committee on Professional Ethics, etc., supra,* 521 F.Supp. at 1232. I have no doubt that lawyers are capable of distinguishing between a dignified and undignified advertisement. Further, the requirement that lawyer-to-lawyer ads be "dignified" is not an unreasonable regulation of commercial speech. The state has a substantial interest in maintaining the image and stature of the legal profession. This interest is advanced by requiring lawyer advertisements to be "dignified."

### IV. *Relief*

Plaintiff seeks both declaratory and injunctive relief. Although the practical effect of injunctive and declaratory relief is virtually identical, a "district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975).

██ An injunction against the enforcement of a state criminal statute "seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the

---

**19.** A disclaimer which merely requires lawyers to state that Pennsylvania does not recognize or certify any lawyer as a specialist would be less restrictive and would avoid any misleading implication that some lawyers are indeed recognized or certified specialists.

heart of *Younger.*" *Id.* Such interference, therefore, is permitted only in exceptional circumstances. *Wooley v. Maynard,* 430 U.S. 705, 712, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). Such a circumstance does not exist when, as in the instant case, prosecution is threatened for the first time. *Id.* Further, an allegation that plaintiff is chilled in the exercise of his first amendment rights is insufficient to support injunctive relief. *Y.W.C.A. v. Kugler,* 342 F.Supp. 1048 (D.N.J.1972), *vacated and remanded,* 475 F.2d 1398 (3d Cir.1973), *aff'd,* 493 F.2d 1402 (3d Cir.), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 885 (1974).

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, was designed to provide a milder alternative to the injunction remedy. Although a declaration does not bar prosecutions under the statute, as a broad injunction would, it should cause the state to reevaluate both its enforcement policies and the statute itself. *Steffel v. Thompson, supra,* 415 U.S. at 470, 94 S.Ct. at 1221.

Since there are no exceptional circumstances, such as repeated prosecutions or bad faith enforcement of the disciplinary rules, justifying the issuance of an injunction, only declaratory relief is appropriate. *Durham v. Brock, supra,* 498 F.Supp. at 218.

Plaintiff's motion for summary judgment will be granted in part and denied in part. Similarly, defendants' motion for summary judgment will be granted in part and denied in part. A judgment and order will be entered consistent with the foregoing.